**UNITED STATES FEDERAL DISTRICT COURT - DISTRICT OF NEW JERSEY**

| | |
|---|---|
| Michael Nelson<br><br>Plaintiff<br>　v.<br>Chad Mitchell Koehn; United Capital Management of Kansas Inc.; Quinn Robert Kendrick; Larry Gene Michel; and *Kennedy Berkley Yarnevich and Williamson Chartered*<br><br>JOINTLY and SEVERALLY as DEFENDANTS | DOCKET NO.:<br>CIVIL ACTION<br><br>I.　Civil Rights Violation<br>II.　Reckless Disregard & Endangerment of Human Life<br>III.　Professional Malpractice<br>IV.　SLANDER / LIBEL / ASSAULT<br>V.　Gross Wanton Negligence<br>VI.　Subordinate Bias Liability ["cat's paw" theory of liability]<br><br>[Jury Trial Demanded] |

NOW HERE COMES, Plaintiff, Michael Nelson ("Nelson"), for cause of action against individuals Chad Mitchell Koehn, Quinn Robert Kendrick, Larry Gene Michel and legal entities United Capital Management of Kansas Inc. (UMCK) and the law firm Kennedy Berkley Yarnevich and Williamson Chartered so states and alleges as follows:

Parties

1. Nelson is a citizen of the State of Nevada, who for mailing purposes of this action utilizes Legal Zoom Private Mailbox address, as listed for legal notices: Michael Nelson 9450 SW Gemini Dr. PMB 90924 Beaverton, Oregon 97008-7105

2. Chad Mitchell Koehn is a citizen of a State other than Nelson, who can be served legal process at: 119 W. IRON, SUITE 101, SALINA, KS 67401

3. Quinn Robert Kendrick is a citizen of a State other than Nelson and can be served legal process at one of his residences and/or office located at: 319 Seitz Drive Salina, Kansas 67401

4. Larry Gene Michel is a citizen of a State other than Nelson and can be served legal process at his offices located at the address: 119 W. IRON STE 710, SALINA, KS 67402

5. United Capital Management of Kansas Inc. is a corporation, with offices in several states, none of which is the US State of Nevada, it may be served by legal process by and through its registered agent: CHAD M. KOEHN, who may be served in the legal process at: 119 W. IRON, SUITE 101, SALINA, KS 67401 according to the Kansas Secretary of State and/or to Chad Mitchell Koehn at the address listed.

6. Kennedy, Berkeley, Yarnevich and Williamson Chartered is a "professional association", who may be served legal process through its registered agent who is listed as: Kennedy, Berkeley, Yarnevich and Williamson Chartered; with address at: 119 W. IRON STE 710, SALINA, KS 67402 according to information with the Kansas Secretary of State.

**JURISDICTION:**

7. The United States Federal Court for the US District of New Jersey has jurisdiction over the parties and the subject matter of this instant action, wherein the damage to Nelson occurred within Essex County, New Jersey, while Nelson was present there.

**VENUE:**

8. This action is proper in the US District of New Jersey Federal Court, through Diversity of Citizenship, an amount in controversy greater than $75,000 and for Federal Questions including Civil Rights Violations and Federal Hate crimes and torts. The cause of action arose in Essex County, New Jersey; where Nelson was served with a SLAPP (Strategic Lawsuit Against Public Participation) petition **replete with KNOWN racial insult (slur) in place of his given name.**

ALLEGATIONS OF FACT:

BACKGROUND

9. "American society remains deeply afflicted by racism. Long before slavery became the mainstay of the plantation society of the antebellum South, Anglo-Saxon attitudes of racial superiority left their stamp on the developing culture of colonial America." Today, over a century after the abolition of slavery, many citizens suffer from discriminatory attitudes and practices, infecting our economic system, our cultural and political institutions, and the daily interactions of individuals

10. On 14 December 2022, Nelson was detained by Homeland Security alleging a warrant out of the US State of Oklahoma, a state which Nelson had never visited.

11. Nelson was detained at the airport, where Nelson was preparing to board a flight to return home to his lawful residence in the Country of **SPAIN (Reino de España)**.

12. Nelson was at the time of detainment a lawful resident of the Country of **SPAIN (Reino de España)**.

13. Nelson has extensive family ties to **SPAIN (Reino de España)**, his only brother is a **SPANISH** National.

14. Nelson's parjea under *parjea de hecho* is a Spanish National, Valenciano woman.

15. Nelson is directly related to children who are **SPANISH** Nationals.

16. On 10 January 2022, at approximately 0930 hours, Nelson was served a SLAPP (Strategic Lawsuit Against Public Participation) state county petition filed by Defendants Chad Mitchell Koehn and United Capital Management of Kansas Inc.

17. The SLAPP state petition served on Nelson, was signed by purported attorney Larry G. Michel and authored by Larry Michel and Quinn Robert Kendrick.

18. The SLAPP petition served on Nelson, also bore the identifying author of Quinn Robert Kendrick with Kansas attorney license number: #28455

19. The SLAPP state petition was authored by Larry G. Michel and Quinn R. Kendrick, while both were employed under master servant relationship to the professional association Kennedy Berkley Yarnevich and Williamson Chartered

20. Kennedy Berkley Yarnevich and Williamson Chartered bears legal liability for the actions of its employees under Master Servant Doctrine, especially gross negligence

21. The SLAPP petition was reviewed by Chad Mitchell Koehn for form and substance pursuant with law, who allowed the known racial slur to exist in the public legal filing.

22. The SLAPP petition was reviewed by United Capital Management of Kansas Inc. as to form and substance pursuant with law, allowing the racial insult to remain.

23. The SLAPP state petition served upon Nelson, in Essex County, was replete with a known RACIAL epithet/INSULT, in place of his given name.

24. The "Racial insult" was prominently placed on the first page of the SLAPP petition.

25. Nelson both identifies with and has family who are **Spanish,** including his only brother, his *parjea* and children all who reside permanently in **Reino de España.**

26. Nelson has been referred to as **"dark skinned"** and **"dark complexioned"** in legal proceedings by Cynthia Blanchard, conspirators of Chad Mitchell Koehn and UCMK.

27. The racial insult was directed at Nelson in order to cause physical and emotional damage, having had its intended consequence as intended by each DEFENDANT jointly and severally, seeking as no human, with decency should inflict damage & emotional distress & suffering upon another using racial insult, in a legal document.

28. Nelson has and continues to suffer tremendously as a result of the racial insult of hate being hurled at him within a public SLAPP petition, served to Nelson in New Jersey.

29. Defendant's all knowing the SLAPP Petition contained a false designation in the form of a known Racial insult, **prominently displayed on the front** page of the SLAPP

petition, and in place of Nelson's given name, did cause the SLAPP petition to be "served" openly without cover into a known highly racially divided detention facility.

30. Defendant's knowingly allowed a RACIAL INSULT to be served upon Nelson in a dangerous facility, where they each knew racial tensions run high.  Defendant's knew the racial insult would place Nelson in harm's way, as they hoped it would cause grave bodily injury to Nelson, having survived more than a month of incarceration,  Based on retaliatory charges by defendant's conspirators, because Nelson is a **WHISTLEBLOWER to massive crypto currency and securities fraud.**

31. The Defendants' knowingly, purposefully, willfully, and wrongfully in violation of the Civil Rights of Nelson aimed and called the person of Nelson not by proper name but instead the Racial insult: "BEAN"; a known insult aimed at Spanish Americans. Defendant's conduct was purposeful, they intended Nelson to suffer physical damage and mental anguish, as they hoped Nelson would be killed or have grave bodily injury inflicted in the racially divided detention facility.

32. Defendant's are believed to have obtained information <u>**illegally**</u> as to Nelson's location inside the highly dangerous detention facility.

33. Defendant's knew that the prominent placement of the Racial insult on the legal document filed as a SLAPP petition would likely cause physical injury, damage, mental anguish and perhaps even death to Nelson, as was their collective intention. Defendant's were working in concert with conspirators who Nelson had filed a <u>whistleblower complaint regarding a cryptocurrency and securities fraud.</u>

34. The Racial INSULT prominently featured, with capitalization in the word was on the bottom right corner, front page, the last line, second word from the right in, excluding prepositions, <u>caused the insult to be readily noticed by others.</u>

35. The petition was read aloud, constituting SLANDER, caused by the Defendants' use of the Racial INSULT in the SLAPP petition and the Racial Insult was immediately picked up on by multiple other spanish speakers who were offended as well.  The insult was capitalized to stand out as it was in place of Nelson's name.

36. Nelson was harassed due to the Racial insult, which caused a scene, wherein persons with physical features more profound than Nelson, made comments and yet other minorities levied threats, as was the intention of the defendants serving a SLAPP petition to Nelson bearing a Racial Insult in place of his given name.

37. Nelson has been mortified at being called a racial insult in writing in a legal document.

38. Nelson has suffered severe emotional and physical pain and damage from the deliberate malice and/or wanton gross negligence of the Defendants' use of the known racial insult in a SLAPP petition, filed in public.

39. As a direct result of the racial insult in place of Nelson's given name, he has had sleepless nights, nightmares, stomach issues, migraines, constant anxiety about being targeted, leading to feelings of worthlessness, self hatred, isolation, loss of self identity, blood pressure issues, severe life-threatening weight gain.

40. Nelson has had the need to see psychologists and other medical professionals as a result of the racial attack perpetrated against Nelson by the Defendants.

41. Nelson has been under medical supervision and treatment including being prescribed medicines which have other negative physical consequences to Nelson, all stemming from the wrongful, illegal, immoral, unethical, purposeful conduct of defendants.

42. The Defendant's owed a duty of care to Nelson, the Courts and the public at large not to use a RACIAL INSULT in legal pleadings, and especially not to do so directed at Nelson inside a highly racially charged facility.  Defendant's have FAILED to mitigate their unlawful, immoral, illegal, wrongful acts using the Racial INSULT!

43. The Defendant's owed a duty of care not to intentionally or otherwise cause hatred, contempt and ridicule based on use of a racial insult in a publicly filed SLAPP lawsuit.

44. Quinn Robert Kendrick and Larry Gene Michel are presumed licensed legal professionals who owed additional duty of care to Nelson, the public and the Courts, not to use the racial insult when filing the SLAPP petition in public. The duty of care owed includes without limitation the duty to review and proofread documents prior to filing them in public legal proceedings and to use "find and replace" if reusing documents and <u>to use extensive proofreading of all legal documents before filing.</u>

45. Kennedy Berkley Yarnevich and Williamson Chartered as a professional association owed a duty of care, to train its employees on word processing documents, use of "find and replace", how to proofread documents, the entity holds responsibility for the actions of its employees under master servant relationship.

46. Nelson has and continues to suffer a high degree of emotional pain, distress, torment and general suffering aggravated by the nature of the racial hatred spewed forth by the defendants, <u>none of which have proffered apology nor mitigation for their acts.</u>

47. Quinn Robert Kenedrick and Larry Gene Michel both read, proofread, authored and signed the SLAPP petition replete with racial insult and had approved the same as to form and substance prior to affixing their names and prior to Larry Gene Michel affixing his digital signature to the SLAPP petition and causing it to be filed to a Court of law and subsequently served upon Nelson <u>in Essex County, New Jersey.</u>

48. Chad Mitchell Koehn named a plaintiff in the SLAPP petition had to read, and approve the SLAPP petition as to form and substance, and allowed the known racial insult to remain after approval of the SLAPP petition as to form and substance, violating Nelson's civil rights and the duty of care he owed to the Courts, Nelson and the public.

49. The SLAPP Petition was/is meant to dissuade Nelson and others similarly situated from reporting "securities irregularities" and to out the identify of a "whistleblower", both in violation of US Federal Law.

50. Chad M. Koehn has subsequently had a US Federal Regulator issue a "wells notice", 9 September 2022, for <u>VIOLATIVE Conduct, violating securities rules and regulations.</u>

51. Chad M. Koehn is now SUSPENDED from any affiliation with any securities broker dealer, **for the violative conduct "securities irregularities".**

52. Chad M. Koehn has been fined by a US Federal Regulator for Violative Conduct.

53. United Capital Management of Kansas Inc. (UCMK) named a plaintiff in the SLAPP petition owed a duty of care to Nelson, the Courts, the public and has legal liability under master servant relationship to the willful and deliberate actions of Chad Mitchell Koehn in allowing the racial insult to exist in a SLAPP petition filed on a public record, seeking to dissuade and silence all whistleblowers regarding his violative conduct as he is now under Actions taken by a US FEDERAL Securities Regulator.

54. The racial INSULT being so prominently placed is not an accident and was purposeful by all DEFENDANTS jointly and severally, individually and collectively, as they sought to physically and emotionally damage Nelson.  They were successful in their intended illegal targeting of Nelson.  The term "Bean" to a Spanish person is no different than calling an African American the "N" word, yet we are marginalized as not as important, and just "beans" that take care of children and cut your lawns. Defendants' acts are OUTRAGEOUS, wrongful, willful, intentional and MUST be resolved!  Defendants' have refused any mitigation to their willful insult in writing.

55. Defendant Chad Mitchell Koehn has a long and storied history of attacking protected classes, Koehn even attacks socio-economic classes of society in naming conventions

of his companies, case in point the "unfortunate naming of his Crypto Currency hedge fund:  RED NECK High Tech Yacht Fund".

56. Koehn, an alleged bigot, who has attacked women, and other protected classes according to court records he "emanates toxic masculinity, described as "misogynistic tendencies".   Koehn's racism is told in his long and storied history.

57. Nelson suffers psychological effects of racism made in writing by the wrongful actions of defendants causing Nelson to suffer hypertension, respiratory distress, gastrointestinal disturbances, migraine and tension headaches, impotence, depression, severe stomach pain, life-threatening weight gain without limitation.

58. Chad Koehn's long and storied history of using racial insults against other members of society, is demonstrable in his purposeful use of "BEAN" in a SLAPP petition he filed against Nelson.  Aimed at Nelson causing physical and mental damage.

59. Defendant's collectively proof read and approved as to form and substance the SLAPP petition served on Nelson in ESSEX COUNTY, NEW JERSEY, where they collectively sought maximum physical and mental damage to Nelson, achieving their intended purpose.   Not one of the defendant's has proffered an apology or taken any measures whatsoever to MITIGATE the damage they have caused and continue to cause to Nelson.   Defendant's actions were calculated and purposeful.

60. Defendant's actions described above were wanton and callous and without legal justification, at a minimum they are gross negligence and legal malpractice.

61. At all times material hereto, Defendants, for their personal gratification, intended that their Racial Insult made would interfere with Plaintiffs' ongoing business relationships, cause physical damage by others, cause outrage.

62. The defamatory Racial Insult concerning Mr. Nelson was intentionally made in order to gratify defendants personal desires to cause harm to Mr. Nelson cause

public reputation and his good name are so offensive as to shock the conscience of the community and warrant the imposition of punitive damages.

**COUNT I  Civil Rights Violation   Including without limitation violating:**

**42 U.S. Code § 1985 - Conspiracy to interfere with civil rights**

**The Civil Rights Act of 1866**

**Title VII of the Civil Rights Act of 1964**

63. Nelson, as Plaintiff, re-alleges and incorporates herein the allegations contained in paragraphs 1 through 62 above.

64. Defendants actions and statements violate Nelson's right to be called by his given name and not an intended racial insult, Defendants actions are made to multiple third parties, including without limitation the Courts, law enforcement and the public.

65. Defendants' action and statement constitute a hate crime, spewing forth a known racial insult within a legal document, aimed at the Plaintiff and used in place of the plaintiff's given name.  The utter failure to MITIGATE the damage of the Racial INSULT has caused continuing physical and emotional suffering, adding further insult to injury.  Defendant's offer nothing more than excuses for gross negligence.

66. Civil rights acts give the Plaintiff the right to be called by his given name throughout society, especially in legal documents and not referred to by a DEROGATORY and racially insensitive name in place of his given name.

67. Civil Rights laws have been enacted in the United States to prevent racially motivated insults from being used in place of one's lawful names especially in public documents.

68. Defendants had knowledge of the racial insult, and an expectation of physical and emotional damage the such insult would have upon Nelson.

69. They knew Nelson was on his way home to his lawful residence in Spain.  Defendant's conduct was wrongful, knowing and illegal, defendant's purposefully and intentionally have FAILED to MITIGATE the continued suffering of the Plaintiff.

70. Defendants read the insult in the SLAPP petition as if it were Nelson's given name, due to their bigotry they viewed the insult to be the same as calling Nelson by his given name, demonstrating clear bigotry and racism.  Defendants' actions constitute Conspiracy Against Rights, 18 U.S.C. § 241 their actions are wrongful and illegal.

71. Nelson has RIGHTS in the United States to be called by his given name and NOT be called by a racially insensitive, derogatory insult in place of his given name.  Especially in legal documents prepared by persons who are educated and licensed in a profession and should be held to a higher legal standard against such purposeful wanton gross negligence or using their profession to exude their malicious racism.

WHEREFORE, plaintiff, Michael Nelson, asks for judgment against the defendants, jointly and severally as both individuals and the legal entities so herein sued for the cause of action as referenced above, for Civil Rights Violation(s) in an amount in excess of $75,000.00; that the Court enter a temporary and permanent injunction barring Defendants from committing further tortious acts, including preventing them from using RACIAL INSULT against others; that the cause of this action be charged against Defendants; and such other and further relief the Court deems just and proper. Plaintiff so herein demands trial by a Jury of 12, on all facts so triable pursuant with rights under the Seventh Amendment.

**COUNT II   Reckless Disregard and Endangerment of Human Life**

72. Nelson, as Plaintiff, re-alleges and incorporates herein the allegations contained in paragraphs 1 through 71 above.

73. Defendants owed a duty of care, to Plaintiff, the public, and the Courts.

74. Defendants' acted with malice of forethought and total disregard for the life of another, knowingly and purposely sending a known racial insult on legal documents into a highly racially divided facility knowing it would endanger human life.

75. Defendants' statement was made with reckless disregard and/or malice.

76. That Nelson has been harmed physically and emotionally by Defendant's conduct.

77. <u>Nelson was made to fear for his life and physical safety,</u> having to try to shield the SLAPP petition from others, in a racially divided facility.

78. That the SLAPP petition was forced from Nelson and read aloud.

79. That others were offended by the RACIAL insult in the SLAPP petition.

80. That Nelson suffered threats of violence by others as a result of the Racial INSULT made in place of Nelson's given name.  That Defendants' have FAILED to apologize or otherwise MITIGATE the damage done and therefore the damage continues.

WHEREFORE, plaintiff, Michael Nelson, asks for judgment against the defendants, jointly and severally as both individuals and the legal entities so herein sued for the cause of action as referenced above, for Reckless indifference and disregard and Endangerment of Human life in an amount in excess of $75,000.00; that the Court enter a temporary and permanent injunction barring Defendants from committing further tortious acts involving racism; that the cause of this action be charged against Defendants; and such other and further relief the Court deems just and proper. Plaintiff so herein demands trial by a Jury of 12, on all facts so triable pursuant with rights under the Seventh Amendment.

**COUNT III Professional Malpractice**

81. Nelson, as Plaintiff, re-alleges and incorporates herein the allegations contained in paragraphs 1 through 80 above.

82. Defendants Larry Gene Michel and Quinn Robert Kendrick are licensed professionals, they were working under master servant relationship to Kennedy Berkley Yarnevich

12

and Williamson Chartered, when they acted with heinous, dangerous wording to cause a racial insult to appear aimed and directed at the Plaintiff, used in place of his given name.  Neither attorney nor their employer has offered apology nor sought any measures to MITIGATE the damage done, instead they have only further exacerbated the damage of the Racial INSULT by refusing to take any steps of mitigation of the damage they purposefully sought out to inflict.

83. Michel and Kendrick owed a duty of care to Nelson, the public and the Courts.  Attorney's MUST be held to a higher standard in society!  The Rules of Professional Conduct and the Cannons REQUIRE attorneys above all others to act in a manner which represents positively the profession of LAW, especially when their ACTS of grave MISCONDUCT are done in legal pleadings before the public and the Courts!

84. Michel and Kendrick committed not less than gross willful wanton professional malpractice, their actions if not gross willful are certainly wanton gross negligence to the duty of care they owed their profession, the Plaintiff, the Courts and the public at large, not to use racially insensitive epithets or insults in place of the names of others.

85. Defendants' statement(s) were made with reckless disregard or malice.   The malice is shown by the defendants FAILURE to apologize or otherwise offer any MITIGATION to the damage caused and thus the damage continues severely due to the failure to MITIGATE their wrongful, unlawful conduct!   Attorneys MUST be held to a higher standard in society, and especially in the LAW, their conduct is unconscionable and further injurious in the fact they BOTH refuse apology nor MITIGATION of their unlawful acts against all HUMAN DECENCY!

86.  Defendants' statements have harmed the reputation of Nelson, caused Nelson extreme emotional distress and physical pain and injury, which Nelson continues to suffer.

87. Defendant's have proffered no apology nor taken any action themselves to lessen the severe injury and burden they thrust upon Nelson.

WHEREFORE, plaintiff, Michael Nelson, asks for judgment against the defendants, jointly and severally as both individuals and the legal entities so herein sued for the cause of action as referenced above, for Professional Malpractice in an amount in excess of $75,000.00; that the Court enter a temporary and permanent injunction barring Defendants from committing further tortious acts including the prevention of defendants' from hurling words of hate and division in legal documents; that the cause of this action be charged against Defendants; and such other and further relief the Court deems just and proper. Plaintiff so herein demands trial by a Jury of 12, on all facts so triable pursuant with rights under the Seventh Amendment.

**COUNT IV SLANDER - LIBEL - DEFAMATION - FAMICIDE**

88. Nelson, as Plaintiff, re-alleges and incorporates herein the allegations contained in paragraphs 1 through 87 above.

89. Defendants actions and statements are untrue and made to multiple third parties, public record and the Courts.   Koehn, UCMK, Michel, Kendrick and their firm Kenndy Berkley Yarnevich and Williamson MUST be held to account for their willful, purposeful, wanton disregard for others, the FACT remains they REFUSE apology and REFUSE any form of MITIGATION of their unlawful ACT!

90. That Nelson has NEVER gone by any name or nickname "bean".

91. That the name "Bean" is a racially insensitive racial insult (insult), known as such by the population at large, meaning the public.   That defendants' intentionally and/or with wanton gross negligence and now refusal to APOLOGIZE nor MITIGATE their unlawful conduct further add INSULT to the INJURY of INSULT and the intended physical and emotional suffering they have caused.

92. That defendants' conduct was wrongful, willful, and amounts to defamation per se, slander, libel and generally famicide.   The FACT defendants' jointly and severally REFUSE to apologize nor proffer any MITIGATION in apology or actions to mitigate the damage they continue to inflict demonstrates clearly their intent to inflict emotional and physical damage to the Plaintiff.

93. Defendants actions and statements are untrue and made to multiple third parties and the public at large in legal filings.   Defendant's lack of remorse, and certain lack of empathy further damages Nelson.   Defendant's have neither individually nor collectively sought to lessen the severity of the pain and mental anguish felt by Nelson, which has only caused further insult and injury.

94. That Nelson has been harmed by Defendant's conduct, in the use of a RACIAL insult, aimed and directed at Nelson, made in place of Nelson's given name.

95. The Racial insult appeared in writing amounting to Libel.   The racial insult was read aloud amounting to the defendants' collectively and individually causing slander repeatedly and generally defamation (famicide).

96. Defendants' statement(s) were made with reckless disregard or malice.  As is further evidenced by the defendants collective failure to MITIGATE their damage, and their staunch refusal to proffer apology nor any efforts whatsoever to MITIGATE the damages they continue to inflict.

97.  Defendants' statements have harmed the reputation of Nelson, and caused extreme emotional and physical suffering, which Nelson continues to suffer to this day.

WHEREFORE, plaintiff, Michael Nelson, asks for judgment against the defendants, jointly and severally as both individuals and the legal entities so herein sued for the cause of action as referenced above, for SLANDER, LIBEL and DEFAMATION in an amount in excess of $75,000.00; that the Court enter a temporary and permanent injunction barring Defendants from committing further

tortious acts; that the cause of this action be charged against Defendants; and such other and further relief the Court deems just and proper. Plaintiff so herein demands trial by a Jury of 12, on all facts so triable pursuant with rights under the Seventh Amendment.

**COUNT V Wanton Gross Negligence and INTENTIONAL Infliction of emotional distress**

98. Nelson, as Plaintiff, re-alleges and incorporates herein the allegations contained in paragraphs 1 through 97 above.

99. Defendants actions and statements are untrue and made to multiple third parties, public record and Courts.

100. Defendants acted with wanton act done in heedless disregard for the life, limbs, health, safety, reputation of Nelson, the act of including a known racial insult in a legal pleading authored by two licensed professionals working as employees of a law firm, having the SLAPP petition reviewed by them each, Larry G. Michel and Quinn R. Kendrick and their law firm personnel and reviewed as to form and substance by their clients Chad Mitchell Koehn and United Capital Management of Kansas Inc. constitutes wanton gross negligence that so many individual human beings could allow a known racial insult to remain in a legal SLAPP petition filed in public and then sent into a racially divided and highly racially charged facility.

101. Defendants' owed a duty of care and failed to provide the duty of care so owed to the plaintiff, the public and the Courts.  Defendants continue to refuse apology nor any other measures to MITIGATE the continuing damage caused by their unlawful acts.

102. Defendants' actions in spewing forth hate, in writing and deliberately serving the hate filled a legal document uncovered into a racially charged environment amounts to wanton gross negligence of the duty of care owed.

103.   Defendants collectively and individually caused purposeful outrage in their spewing forth of a known racial insult in writing committing the tort of "intentional infliction of emotional distress." *See id. at737 n.1, 565 P.2d at 1174 n.1* (quoting Restatement (Second) of Torts § 46(1) (1965) : "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress. ")  Defendant's conduct is outrageous, intentional to inflict emotional distress; Nelson has now severe psychological responses to such stigmatization consisting of feelings of humiliation, isolation, and self-hatred, as well as severe physical aliments and ongoing need of medical support.

104.   "The racial insult remains one of the most pervasive channels through which discriminatory attitudes are imparted."   No different here, the defendant's actions allowing the racial insult to remain in legal pleadings was done purposefully as they read the insult of hate and in their minds they read the name "Nelson" in place of the racial insult of hate "Bean" they spewed forth in place of the plaintiffs given name. Defendants fail to apology nor proffer any mitigation to their unlawful acts.

105.    That Nelson continues to suffer injuries to dignity and self-regard, that the racial insult has communicated the message that distinctions of race are distinctions of merit, dignity, status, and personhood.   Defendant's have taken no actions to lessen the damage to Nelson, their in action and failure to demonstrate remorse deepens the pain and damage done to Nelson by their careless, wanton, gross negligence in the duty of care owed, thus demonstrating their purposeful intentional infliction of distress.

106.    That the failure of defendant's to timely nor on their own accord correct the racial insult made in place of Nelson's given name forces Nelson to learn and internalize the messages contained in racial insult, having continued mental anguish and damage to

    Nelson and society as a whole. The fact defendants' fail to mitigate their unlawful acts and behavior only causes further severe damage stemming from their acts.

107. Nelson continues to suffer psychological responses to such stigmatization consisting of feelings of humiliation, isolation, and self-hatred for his darker complexion and for physical attributes. Defendant's fail to mitigate their intentional willful bad act in their racism, further demonstrating and proving their intention to inflict maximum damage, intentional infliction of emotional distress, and intentional acts to cause grave bodily harm to the plaintiff and others.

108. Defendants failed in their individual and collective duty of care to Nelson, the Courts and the public through the use of the racial insult in place of Nelson's name.

**WHEREFORE**, plaintiff, Michael Nelson, asks for judgment against the defendants, jointly and severally as both individuals and the legal entities so herein sued for the cause of action as referenced above, for Wanton Gross Negligence, in an amount in excess of $75,000.00; that the Court enter a temporary and permanent injunction barring Defendants from committing further tortious acts; that the cause of this action be charged against Defendants; and such other and further relief the Court deems just and proper. Plaintiff so herein demands trial by a Jury of 12, on all facts so triable pursuant with rights under the Seventh Amendment.

**VI. Violation of Title VII of the Civil Rights Act of 1964,**

**42 U.S.C. §2000e, et seq. Section 703(a) of Title VII Race, Color, and National Origin Discrimination Subordinate Bias Liability**

**("cat's paw" theory of liability);** *Equal Employment Opportunity Commission v. BCI Coca-Cola Bottling Company of Los Angeles, 450 F. 3d 476 (10th Cir. 2006)*

109. Nelson, as Plaintiff, re-alleges and incorporates herein the allegations contained in paragraphs 1 through 108 above.

110. Defendants actions and statements are untrue and made to multiple third parties, public record and Courts, at minimum constitute gross willful wanton negligence in violation **42 U.S.C. §2000e, et seq. Section 703(a) of Title VII Race, Color, and National Origin Discrimination Subordinate Bias Liability.**

111. Defendants acted with wanton act done in heedless disregard for the life, limbs, health, safety, reputation of Nelson, the act of including a known racial insult in a legal pleading authored by two licensed professionals working as employees of United Capital Management of Kansas Inc. and Kennedy Berkley Yarnevich and Williams Chartered having legal liability under master servant to each of those herein sued in this instant action, **("cat's paw" theory of liability);** *Equal Employment Opportunity Commission v. BCI Coca-Cola Bottling Company of Los Angeles, 450 F. 3d 476 (10th Cir. 2006)*

112. Nelson continues to suffer psychological responses to such stigmatization consisting of feelings of humiliation, isolation, and self-hatred for his darker complexion and for physical attributes. Defendant's fail to mitigate their intentional willful bad act in their racism, further demonstrating and proving their intention to inflict maximum damage, intentional infliction of emotional distress, and intentional acts to cause grave bodily harm to the plaintiff and others.

113. Defendants failed in their individual and collective duty of care to Nelson, the Courts and the public through the use of the racial insult in place of Nelson's name.

**WHEREFORE**, plaintiff, Michael Nelson, asks for judgment against the defendants, jointly and severally as both individuals and the legal entities so herein sued for the cause of action as referenced above, for Wanton Gross Negligence, in an amount in excess of $75,000.00; that the Court enter a temporary and permanent injunction barring Defendants from committing further tortious acts; that the cause of this action be charged against Defendants; and such other and further relief the Court

deems just and proper. Plaintiff so herein demands trial by a Jury of 12, on all facts so triable pursuant with rights under the Seventh Amendment.

This Complaint, though filed *pro se*, should "be liberally construed," *Estelle, 429 U.S.* "pro se … however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," ibid. Cf. Fed. Rule Civ. Proc. 8(f) ("All pleadings shall be so **construed as to do substantial justice"**). "filings generously and with the leniency due pro se litigants", *see Erickson v. Pardus, U.S. 127 S.Ct. L.Ed.2d (2007); Andrews v. Heaton, 483 F.3d (10th Cir.2007).*

Respectfully Submitted, this 10th day of January 2022.

*[signature]*

Michael Nelson - Pro Se

Michael Nelson
9450 SW Gemini Dr PMB 90924
Beaverton, Oregon 97008-7105
P: 702.932.3434 Email: oklahomaremote @ gmail.com

DEMAND FOR PRETRIAL CONFERENCES AND TRIAL BY JURY OF TWELVE Plaintiff hereby expressly request that the Court conduct a Pretrial Conference herein upon completion of discovery and prior to trial; and that all issues of fact, triable as a matter of right to a jury under, the Seventh Amendment to the United States Constitution, be tried to a jury of twelve. Respectfully Submitted, this 14th day of December 2022. NEWARK NEW JERSEY TRIAL LOCATION, is respectfully demanded.

Michael Nelson - Pro Se

*[signature]*

Michael Nelson
9450 SW Gemini Dr PMB 90924
Beaverton, Oregon 97008-7105
P: 702.932.3434 Email: oklahomaremote @ gmail.com